IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action |
| v. | ) | No. 07-CR-00087-04-W-NKL |
| | ) | |
| AHMAD MUSTAFA, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Matt J. Whitworth, United States Attorney, and the undersigned Assistant United States Attorneys, and Defendant AHMAD MUSTAFA ("Defendant"), represented by Troy K. Stabenow, Assistant Federal Public Defender.

Defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** Defendant agrees to and hereby does plead guilty to Count One of the Second Superseding Indictment, charging him with a violation of 18 U.S.C. § 371, that is, conspiracy to violate 50 U.S.C. §§ 1701 – 1706 (International Emergency Economic

Powers Act). By entering into this plea agreement, Defendant admits that he knowingly committed this offense, and is in fact guilty of this offense.

      **3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

      A. Defendant Ahmad Mustafa (Mustafa), a native of Iraq, has been a Lawful Permanent Resident of the United States since October 1, 1998. Defendant Mustafa is also known as Abu Omar (meaning "Father of Omar") and Ahmad Al-Katib (a reference to Mustafa's family). From approximately July1, 1996, until the organization's closure in October 2004, Mustafa was a fund-raiser for Defendant Islamic American Relief Agency (IARA), an Islamic charitable organization based in Columbia, Missouri. Defendant Mustafa reported directly to Defendant Mubarak Hamed (Hamed), Executive Director of IARA.

      B. Pursuant to authority granted in the International Emergency Economic Powers Act (IEEPA), on August 2, 1990, President George H.W. Bush issued Executive Order 12722, which declared a national emergency with respect to Iraq, and on August 9, 1990, issued Executive Order 12724, which empowered the Secretary of the Treasury to promulgate regulations to effect these Executive Orders. Pursuant to this authority, the Secretary of Treasury issued the Iraqi Sanctions Regulations, 31 C.F.R. § 575, which prohibited among other things unauthorized travel to Iraq by U.S. persons, including Lawful Permanent Resident aliens such as Mustafa, and unauthorized transfer of money or goods to Iraq by U.S. persons, including Lawful Permanent Resident aliens. Mustafa never received authority from the United States government to travel to Iraq for any purpose, nor to transfer money to Iraq for any purpose.

      C. In his capacity as a fund-raiser for IARA, Mustafa traveled throughout the United States soliciting charitable contributions. Mustafa concentrated his efforts in raising funds for use in Iraq. To assist in his fund-raising efforts, Mustafa frequently used publications prepared by IARA discussing IARA's efforts and activities inside Iraq.

      D. In both 1999 and 2000, Mustafa traveled to Iraq. While there, he made some inquiries, as a representative of IARA, about funds being expended on IARA's behalf. In early 2001, Mustafa traveled to Iraq specifically for IARA business, at the request of Hamed. For several weeks, Mustafa visited cities throughout "Kurdistan" including Duhouk and Irbil. During the trip, Mustafa met with numerous officials, including Hushyar Zibari, who was at the time a leader in the "Patriotic Democratic Party of Kurdistan" (PDK) to discuss the process of opening an IARA office in Iraq. Zibari is currently the foreign minister of Iraq. Mustafa also looked to find a building suitable for an IARA office in the Kurdish provinces of Iraq.

      E. In addition to his own fund-raising activities, Mustafa is aware of at least one other member of IARA raising funds to be send to Iraq – Defendant Abdel Azim

El-Siddig (El-Siddig). El-Siddig told Hamed that the Chairman of the Board of the Islamic Center at a New York mosque, Masjid Musab ibn Omayr, accused IARA of diverting money collected for Iraq to Sudan, and that El-Siddig had to assure the Chairman that the donations were actually going to Iraq. Hamed related the account to Mustafa.

    F. At all times material, Mustafa believed that IARA had the permission of the United States government to raise funds for use in Iraq and to deliver funds to Iraq, and that he was not acting unlawfully in conducting fund-raising for Iraq. From approximately 2000 on, Defendant Mustafa repeatedly complained to Hamed that IARA was minimizing publicity regarding fund-raising activities directed toward Iraq.

    G. However, Mustafa knew that he did not have permission from the United States government to send funds to Iraq for personal reasons, and that his doing so would violate the law. Defendant Khalid Al-Sudanee (Al-Sudanee), in Amman, Jordan, was an agent for delivering the funds and aid into Iraq. In approximately 1998, Mustafa was contacted on his home phone by Al-Sudanee, who would have obtained Mustafa's phone number from Hamed. Al-Sudanee relayed a message that Mustafa's brother, who lived in Mosul, Iraq, needed money. Knowing that such a transfer violated the law, Mustafa nevertheless asked Al-Sudanee to provide money to his brother, in the approximate amount of $1,000. Al-Sudanee made the transfer to Mustafa's brother, in Mosul, Iraq, on Mustafa's behalf. On at least one other occasion, Mustafa provided funds to Hamed, and asked that Hamed have the money sent on to his family in Iraq through Al-Sudanee. Hamed and Al-Sudanee transferred the funds on Mustafa' behalf, as requested.

    H. In April 2005, after federal investigators interviewed Mustafa in connection with IARA's activities in Iraq, Mustafa confronted Hamed regarding whether IARA had a license to raise funds for Iraq. At that time, for the first time, Hamed told Mustafa that IARA did not have permission to raise funds for use in Iraq. Hamed then told Mustafa to lie to federal agents, by telling them that funds were not raised for use in Iraq, but rather for Iraqi refugees outside of Iraq. Mustafa chose not to follow this instruction. Thereafter, Mustafa had a conversation with Defendant Ali Mohamed Bagegni regarding Hamed's attempt to create the appearance that funds were only directed to Iraqi refugees outside Iraq.

    I. Defendant Mustafa admits that sending money to Iraq violated the provisions of United States law, specifically 50 U.S.C. § 1701-1706 and 31 C.F.R. § 575.210 (transfer of funds to any person in Iraq). Defendant Mustafa acknowledges that when he directed money to his family in Iraq, he failed to obtain from OFAC the necessary license or authorization and that he acted willfully, meaning that he intentionally violated a known legal duty. Further, Defendant Mustafa acknowledges that he formed and voluntarily participated in the agreement with Defendants Hamed and Al-Sudanee to send the monies to his family in Iraq, in violation of IEEPA.

    J. The United States stipulates and agrees that Defendant Mustafa's criminal offense is limited to his agreement with Defendants Hamed and Al-Sudanee to deliver

money to his family in Iraq without a license or permission.  Consequently, the United States stipulates that Defendant Mustafa's fund-raising activities and participation in IARA business in the United States and Iraq does not form the basis for any relevant conduct to be considered in calculating Defendant Mustafa's advisory sentencing range under the United States Sentencing Guidelines.

**4. Use of Factual Admissions.**  Defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of Defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2).  Defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty, subject to the conditions stated at paragrah 3(J) above.

**5. Statutory Penalties.**  Defendant understands that upon his plea of guilty to Count One of the Indictment, charging him with 18 U.S.C. § 371, that is, Conspiracy to Violate 50 U.S.C. §§ 1701 – 1706 (International Emergency Economic Powers Act), the minimum penalty the Court may impose is a term of probation, while maximum penalty the Court may impose is not more than five (5) years of imprisonment, a $250,000 fine, a three (3) year term of supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. Defendant further understands that this offense is a Class D felony.

**6. Sentencing Procedures.**  Defendant acknowledges, understands and agrees to the following:

    A.  In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may

impose a sentence either less than or greater than Defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

   B. The Court will determine Defendant's applicable Sentencing Guidelines range at the time of sentencing;

   C. In addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three (3) years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

   D. If Defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two (2) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three (3) years, less the term of imprisonment imposed upon revocation of Defendant's first supervised release;

   E. The Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

   F. Any sentence of imprisonment imposed by the Court will not allow for parole;

   G. The Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

   H. Defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to his involvement with the organization Islamic American Relief Agency, his fund-raising activities related to Iraq, and his travel to Iraq, for which it has venue and which arose out of Defendant's conduct described above.

Further, the United States Attorney's Office agrees to recommend to the Department of Homeland Security, U.S. Immigration and Customs Enforcement, that Defendant not be deported as a result of this plea. In the event of any removal proceedings, the United States Attorney's

Office agrees to notify the Department of Homeland Security, U.S. Immigration and Customs Enforcement of the full nature and extent of any cooperation provided by Defendant in this or any other investigation undertaken by this Office. Defendant understands that this Agreement is between himself and the United States Attorney's Office and that this Agreement neither involves nor binds any other department or agency of the United States government.

Further, the United States Attorney's Office has informed Defendant that it does not intend to bring any charges against Defendant's son, Omar Mustafa, related to his structuring of financial transactions to avoid financial institution reporting requirements that are known to the Government as of the date of this agreement and detailed more fully in a separate submission to the Court. However, Defendant understands that the United States' agreement not to prosecute Omar Mustafa for these known offenses is conditioned upon Omar Mustafa's abstaining from further unlawful conduct, and if Omar Mustafa engages in any further violations of law, the Government is released from the agreement set forth in this paragraph. Further, the agreement set forth in this paragraph in no way forecloses or compromises the Government's ability to pursue civil remedies against Omar Mustafa or any other person related to the above-referenced conduct.

Finally, the United States Attorney for the Western District of Missouri agrees to move to dismiss Count 13 and the Forfeiture Allegation of the Second Superseding Indictment at sentencing.

Defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal

activity of which the United States Attorney for the Western District of Missouri has no knowledge.

Defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which Defendant might be charged is based solely on the promises made by Defendant in this agreement. If Defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. Defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. Defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. Defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** Defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of Defendant, including the entirety of his criminal activities. Defendant understands these disclosures are not limited to the crime to which he has pleaded guilty. The United States may respond to comments made or positions taken by Defendant or Defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and Defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

DEFENDANT INITIALS: __A.M.__                -7-
Case 4:07-cr-00087-NKL   Document 352   Filed 12/16/09   Page 7 of 14

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of Defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, Defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if Defendant can show a fair and just reason for requesting the withdrawal. Defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside Defendant's applicable Sentencing Guidelines range, or imposes a sentence that Defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   A. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below Defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   B. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2M5.1(a) (1) of the United States Sentencing Guidelines, which currently provides for a base offense level of 26, but which until November 1, 2001, provided for a base offense level of 22. The parties have not yet agreed which Guidelines Manual applies, and anticipate determining this issue during the presentence investigation;

   C. Defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless Defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

DEFENDANT INITIALS: __A.M.__ -8-
Case 4:07-cr-00087-NKL   Document 352   Filed 12/16/09   Page 8 of 14

D. Defendant's criminal history category appears to be Category I. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

E. Defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide Defendant with a basis to withdraw his plea of guilty;

F. Defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of Defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. Defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. Defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

G. Defendant understands and agrees that the factual admissions contained in Paragraphs 3 and 4 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** Defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by Defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the

plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.**  Defendant understands that the United States expressly reserves the right in this case to:

    A.  oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    B.  comment on the evidence supporting the charge in the Information;

    C.  oppose any arguments and requests for relief Defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    D.  oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.**  Defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    A.  the right to plead not guilty and to persist in a plea of not guilty;

    B.  the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    C.  the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    D.  the right to confront and cross-examine the witnesses who testify against him;

    E.  the right to compel or subpoena witnesses to appear on his behalf; and

    F.  the right to remain silent at trial, in which case his silence may not be used against him.

Defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial.  Defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if Defendant answers

those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. Defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    A. Defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement.

    B. Defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) a sentence imposed in excess of the statutory maximum; or (4) an illegal sentence. An illegal sentence is a sentencing error more serious than a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an illegal sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), Defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Waiver of FOIA Request.** Defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

17. **Waiver of Claim for Attorney's Fees.** Defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

18. **Defendant's Breach of Plea Agreement.** If Defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this

DEFENDANT INITIALS: __A.M.__     -11-

plea agreement and the date of sentencing, or fails to appear for sentencing, or if Defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. Defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

Defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. Defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**19. Defendant's Representations.** Defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. Defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. Defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**20. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the

parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**21. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

MATT J. WHITWORTH
United States Attorney

Dated: December 16, 2009

/S/

ANTHONY P. GONZALEZ
Assistant United States Attorney

Dated: December 16, 2009

/S/

STEVEN M. MOHLHENRICH
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: December 16, 2009

/S/

AHMAD MUSTAFA
Defendant

I am defendant AHMAD MUSTAFA's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, AHMAD MUSTAFA's decision to enter into this plea agreement is an informed and voluntary one.

Dated: December 16, 2009

/S/

TROY K. STABENOW
Attorney for Defendant